
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JOHN J. LAU** | § | |
| xxx-xx-6993 | § | Case No. 11-40284 |
| **and DEBORAH Y. LAU** | § | |
| xxx-xx-1436 | § | |
| 5622 Harbor Town, Dallas, TX 75287 | § | |
| | § | |
| Debtors | § | Chapter 7 |
| CATHY SUNG | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-4091 |
| | § | |
| JOHN J. LAU | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Cathy Sung ("Plaintiff" or "Sung") seeking a determination of whether an alleged debt owed to her by the Defendant-Debtor, John J. Lau ("Defendant" or "Lau"), is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiff contends that the debt is non-dischargeable under the alternative grounds set forth in 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6). After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

# FINDINGS OF FACT

1. The Debtor-Defendant, John J. Lau, was a principal in JNC Partners, LLC ("JNC"), a company that was engaged in speculative real estate ventures through the procurement of option contracts on unimproved tracts of real property.

2. JNC attempted to compete against larger real estate acquisition companies by paying larger amounts in unrefundable earnest money deposits to potential sellers of large real estate tracts and by truncating the closing deadline to lure potential sellers to choose its offer. While the option contract was pending, JNC would attempt to market particular parcels of the tract in order to determine the overall viability of the project.

3. JNC attempted to utilize a substantial amount of its own money for earnest money deposits but did at times borrow money from outside sources, including individuals.

4. Rather than giving outside individuals participation interests constituting an actual ownership percentage in any particular venture, thereby diluting any substantial returns that would otherwise come to the company, JNC preferred to offer substantially higher rates of return to investors on funds lent to the company — rates that were substantially higher than would otherwise be available in the marketplace.

5. In this instance, at the request of certain individuals primarily from the Chinese-American community who were associated with Nortel Networks, the Defendant, on behalf of JNC, met and presented information regarding an investment opportunity to a number of individuals in July 2007 pertaining to an existing JNC project known as "Melissa 52."

6. "Melissa 52" pertained to the existence of an option contract already held by JNC for the purchase of a 52-acre tract of unimproved real estate near Melissa, Texas.

7. Among the individuals who attended this informational meeting in July 2007 was the Plaintiff, Cathy Sung and her then-husband, Frank Sung, who, like all of the other individuals at the meeting, were looking for an opportunity to invest money to obtain a rate of return significantly higher than that generically available in the market.

8. A number of attendees expressed interest in tendering funds to JNC.[2]

9. The Plaintiff, a Nortel engineer, and her husband decided to tender $100,000 to the JNC project in exchange for a fixed rate of return.

10. Although a number of individuals from the July 2007 meeting ostensibly pooled their money together under a later-organized umbrella entity known as Prosperity TWYLC, LLC, in order to meet a designated million-dollar threshold, money was actually paid by individuals directly to JNC.[3]

11. The Defendant, on behalf of JNC, actually issued a debt certificate to Frank and Cathy Sung on July 18, 2007, recognizing that the Sungs had tendered the sum of $100,000 "to be invested in the Melissa 52 Project for a period of 2 years with a buy back commitment from JNC Partners LLC for a 20% / year (simple interest) (i.e. 40% for 2 years)."[4]

12. As the formal representative of the Prosperity group, Monica Wang reviewed the signed Melissa 52 contract and actually visited the property site several times.

13. However, JNC was unable to close on the option contract on the 52-acre tract and the contract was terminated pursuant to its terms.

14. JNC lost its escrow money and its fee for extending the closing deadline on the Melissa 52 project.

---

[2] Defendant's Ex. A.

[3] The funds were tendered too quickly for the Prosperity corporate formalities to be completed. Thus, the Defendant confirmed in his testimony that, though JNC might have in some respects viewed Prosperity as a single investor, individual Prosperity investors were booked by individual names, had different rates of return, and differing dates of investment from which interest would be calculated, although in this instance the tendering of funds by Prosperity investors all occurred within a few days of each other.

[4] Plaintiff's Ex. 2 at pp. 8-9. There were only certain pages of four exhibits admitted for the Plaintiff since those particular fragments were the only documents actually produced to the Defendant since they were attachments to the Plaintiff's complaint. All other exhibits presented by the Plaintiff were excluded for the Plaintiff's failure to identify and produce such documents to the Defendant during discovery as reflected in that certain "Order Granting Defendant's Motion for Discovery Sanctions and Exclusion of Evidence" entered in this case on August 29, 2012 [dkt #42].

15. At the time of the termination of the Melissa 52 contract, JNC still possessed a sound financial foundation with available cash.

16. On December 6, 2007, the Defendant, on behalf of JNC. met with the Prosperity investors, including the Plaintiff, and notified them that the Melissa 52 contract had been terminated.

17. At the December 6, 2007 meeting, the Defendant offered to return 100% of the borrowed funds to each investor, together with the accrued interest.

18. Though other pending projects were described at the meeting, the Defendant did not offer, as an alternative to a refund, to transfer any investor's funds over to a particular pending project at JNC, including the so-called "Baytown project."

19. The Defendant gave each of the Prosperity investors a period of two months, from early December 2007 until the end of January 2008, to decide which option each would prefer.

20. Many of the Prosperity investors elected to recoup their tendered funds, plus the accumulated interest, from JNC and JNC did, in fact, refund all of the borrowed funds to those Prosperity investors who requested a refund.[5]

21. A number of those refunds were equivalent to the $100,000 invested by the Sungs.[6]

22. Those requested refunds were processed within days of the January deadline and were delivered to Monica Wang in early February 2008 for actual delivery to the electing individuals.

23. A total of $517,000 in refunds were issued to various Prosperity members by JNC.

24. Other Prosperity investors, including the Plaintiff, were not interested in a refund, but instead urged JNC to retain the funds and utilize them elsewhere in order to retain the attractive interest rates offered by JNC that were unavailable elsewhere.

---

[5] Defendant's Ex. E.

[6] *Id.*

25. The retention of funds occurred on the same terms as when originally invested.

26. The credit market collapsed in the fall of 2008, and had a severe economic impact upon real estate development, thus precluding any refinancing of any real estate owned by JNC.

27. The collapse of the real estate investment market soon followed and JNC no longer could afford to honor the debt commitments that it had previously issued, including the remaining debt commitment to the Plaintiff.[7]

28. On January 28, 2011, the Defendant and his spouse, Deborah Lau, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

29. On February 10, 2011, JNC Partners, LLC filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

30. The claim of the Plaintiff was properly scheduled as an unsecured claim in the Defendant's bankruptcy case.[8]

31. On May 3, 2011, the Plaintiff filed her original complaint in this adversary proceeding, seeking a determination that the debt owed to her is non-dischargeable under 11 U.S.C. §523(a)(2)(A), (a)(4), or (a)(6).

32. The Plaintiff has failed to demonstrate by a preponderance of the evidence that any debt owed to her by the Defendant was procured under circumstances constituting actual fraud.

33. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant made representations to the Plaintiff that the Defendant knew were false at the time that such representations were made.

34. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant made false representations to the Plaintiff with the intention and purpose of deceiving the Plaintiff.

---

[7] It was about this time, as the company was experiencing financial duress due to market conditions, JNC actually did refund $10,000 to the Plaintiff in July 2009 — leaving a debt of $90,000. Details of that refund are not reflected in the tendered evidence.

[8] Schedule F filed by the Debtors on February 18, 2011 [dkt #17] in case no. 11-40284.

35. The Plaintiff has failed to demonstrate by a preponderance of the evidence that she justifiably relied upon any false representations by the Defendant since no such false representations were made to the Plaintiff.

36. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant acted in a fiduciary capacity as to the Plaintiff at any time.

37. The Plaintiff has failed to demonstrate by a preponderance of the evidence that a trust relationship existed between the Defendant and herself prior to the creation of the indebtedness in question.

38. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant appropriated any funds from the Plaintiff with a fraudulent intent.

39. The Plaintiff has failed to demonstrate by a preponderance of the evidence that, at the time that the debt was created, the Defendant acted with the specific subjective intent to cause injury to the Plaintiff.

40. The Plaintiff has failed to demonstrate by a preponderance of the evidence that, at the time that the debt was created, the actions of the Defendant created an objective substantial certainty of harm to the Plaintiff.

41. While the circumstances demonstrate a significant financial loss to the Plaintiff, thereby placing the Plaintiff in a sympathetic light, such sympathy cannot be permitted to stand in lieu of the required degree of proper proof pertaining to the Defendant's conduct and intentions under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

42. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. In seeking to except the debt to her from the scope of the Debtor-Defendant's discharge, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4. All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[9] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

5. However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

*Nondischargeability Under 523(a)(2)(A): Debt Arising by Fraud, False Pretenses, or False Representation*.

6. The Plaintiff's Complaint as amended seeks a determination that the debt owed to her should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

7. 11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

---

[9] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

8. Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[10] the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

9. The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].[11]

10. Because any representation by the Defendant regarding the future fulfillment of the debt instrument or the Plaintiff's expectations arising therefrom pertained to a future event, any such statement cannot be properly characterized as a false representation or a false pretense in this Circuit.

---

[10] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[11] While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

11. Thus, the validity of the Plaintiff's claim under §523(a)(2)(A) in this case rests upon sufficient proof that the debt was obtained by actual fraud.

12. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:
    (1) the debtor made representations;
    (2) at the time they were made the debtor knew they were false;
    (3) the debtor made the representations with the intention and purpose to deceive the creditor;
    (4) the creditor justifiably relied on such representation; and
    (5) the creditor sustained losses as a proximate result of the representations.

    *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

*Nondischargeability Under §523(a)(4):*
*Debt Arising from Fraud or Defalcation*
*in a Fiduciary Capacity, Embezzlement or Larceny.*

13. The Plaintiff's Complaint as amended seeks a determination that the debt which she alleges is owed to her should be excepted from discharge under §523(a)(4).

14. 11 U.S.C. §523(a)(4) states that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

15. The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

16. Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

17. However, "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

18. The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

    > [T]he concept of fiduciary under §523(a)(4) is narrower than it is under general common law. Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4).
    >
    > . . . Statutory trusts, by contrast, can satisfy the dictates of §523(a)(4). It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of §523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.

    *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

19. Thus, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question. *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

20. "Embezzlement is defined for the purposes of §523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted,

or into whose hands it has lawfully come."[12] *Id.*

21. "Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another. It also applies where . . . a person lawfully obtains property, but then fraudulently appropriates it for his or her own use." *Powers v. Caremark, Inc. (In re Powers)*, 261 Fed. Appx. 719, 723 (5th Cir. 2008).

22. "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006).

23. Fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property." *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008).

24. "Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Int'l Beauty Products, LLC v. Beveridge (In re Beveridge)*, 2009 WL 2591143, at *10 (Bankr. N.D. Tex. Aug. 18, 2009) (citations omitted).

*Nondischargeability Under §523(a)(6):*
*Debt Arising from Willful and Malicious Injury*

25. The Plaintiff further contends that the debt owed to her should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon her by the Debtor-Defendant.

26. Section 523(a)(6) of the Bankruptcy Code provides that:

 (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

---

[12] "Both larceny and embezzlement involve the fraudulent appropriation of property; they differ only in timing. Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the Debtor's care." *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006).

27. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6).

28. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

29. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

30. Because the Court concludes that the Plaintiff has failed to prove her cause of action under any of the relevant subsections of §523(a) by a preponderance of the evidence, judgment must be rendered for the Debtor-Defendant in this action.

31. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

32. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 10/24/2012

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE